Filed 2/4/25  Shakir v. Billingsley CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CREON SHAKIR, a Minor, etc., et al., | B327102 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 20STCV20859) |
| v. | |
| TAIJUAN BILLINGSLEY, SR., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James A. Kaddo, Judge.  Affirmed.

Law Offices of Gabriel H. Avina and Gabriel Herrera Avina for Plaintiff and Appellant.

Horvitz & Levy, H. Thomas Watson, Mark A. Kressel; Courtney D. Flannery & Associates, Michael Hyun Park and Raquel Vallejo for Defendant and Respondent.

_____

Creon Shakir (Shakir) was a passenger in a car driven by his mother, Creonia Ward (Ward), when Taijuan Billingsley, Sr., (Billingsley) rear-ended them. By and through his guardian ad litem, Shakir sued Billingsley for damages. Following trial, the jury found that Billingsley was not negligent. Shakir appeals, raising several arguments: (1) The trial court erred in denying his *Batson/Wheeler*[1] motion contesting Billingsley's peremptory challenge to a prospective juror; (2) The trial court erred in denying his three for-cause prospective juror challenges; (3) The trial court committed two evidentiary errors; and (4) The trial court made certain comments that invited jury nullification.

We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 4, 2018, Ward was driving eight-year-old Shakir to a party when her car was rear-ended by Billingsley. Shakir, who suffers from cerebral palsy and related medical conditions, allegedly suffered serious injuries as a result of the accident.

Shakir filed the instant lawsuit for damages. Following trial, the jury found Billingsley not negligent and accordingly answered no further questions on the special verdict form. Judgment was entered, and Shakir's timely appeal ensued.

---

[1] *Batson v. Kentucky* (1986) 476 U.S. 79 (*Batson*); *People v. Wheeler* (1978) 22 Cal.3d 258 (*Wheeler*).

## DISCUSSION

I. *Batson/Wheeler Motion*

Shakir argues that the trial court failed to conduct a "'sincere and reasoned'" evaluation of Billingsley's justifications for excusing a prospective juror.

### A. Relevant factual background

#### 1. *Initial panel of prospective jurors*

Voir dire began with 18 prospective jurors called up. During the initial questioning, the trial court excused several prospective jurors for hardship and called up replacements. When the time came for the first round of for-cause and peremptory challenges, four of the 18 seated prospective jurors were Latino. The other persons represented a diverse population.[2]

#### 2. *First round of for-cause and peremptory challenges*

During the first round of juror challenges, the trial court sua sponte excluded one prospective juror because he insisted that he was biased.

Shakir's counsel, Gabriel Herrera Avina, asserted his first for-cause challenge against a Latina prospective juror, who said that she sat on another jury in a car accident trial and found that it was a "waste of time." The trial court denied this challenge because the prospective juror had acknowledged that this was a different case and that she did not know the facts in the instant case.

---

[2] Shakir did not create a record of the jurors' races and ethnicities. However, in the context of evaluating *Batson/Wheeler* challenges, we may infer certain ethnicities from last names. (*People v. Gutierrez* (2017) 2 Cal.5th 1150, 1156, fn. 2 (*Gutierrez*).)

Shakir's second for-cause challenge was directed at Prospective Juror No. 4, who stated that she and her mother had previously been sued; thus, this case gave her a "little bit of a weird vibe." The trial court denied this challenge on the grounds that the prospective juror had stated that she does investigations as part of her human resources job and understands the need to be fair and listen to all of the evidence before making a decision, which she could do here.

Shakir's third for-cause challenge was directed at a prospective juror who felt that Shakir was disrespectful for wearing sunglasses in the courtroom. On further examination, the prospective juror explained that he believed that it was disrespectful for the plaintiff to wear sunglasses when the jurors had been given a dress code. After the trial court explained that Shakir wore sunglasses for medical reasons, the prospective juror retracted his comments. The trial court accordingly denied Shakir's challenge.[3]

Billingsley passed for cause.

Shakir then made his first peremptory challenge.[4] Billingsley accepted the jury, which included three Latino individuals, as constituted. Shakir's second peremptory challenge was against a Latina prospective juror. Billingsley again accepted the jury as constituted. Shakir then made a third

---

[3] The trial court admonished Shakir's counsel that he bore responsibility for not advising the court that he was bringing Shakir to court and that Shakir wore sunglasses for medical reasons. "So don't hold it against [this prospective juror] because you did not tell us so we could advise the jury."

[4] Shakir challenged Prospective Juror No. 4.

4

peremptory challenge. Thereafter, Billingsley made his first peremptory challenge to a Latina prospective juror. Shakir made a fourth peremptory challenge. Billingsley accepted the jury as constituted. Shakir then made a fifth peremptory challenge.

3. *Second round of for-cause and peremptory challenges*

At this point, the trial court called up a new batch of prospective jurors. Three of the new prospective jurors were Latino. One such individual, Prospective Juror No. 17, stated: "I don't speak English very well. So every—all you guys talking about over here, I understand like 40, 50 percent. So in the end, if everybody is going to say it's guilty, I'm going to say it's guilty. So I don't have to answer correctly."

At the end of the round of questioning, Billingsley's counsel, Raquel Vallejo, asked for a sidebar with the court. At the sidebar, Ms. Vallejo attempted to challenge Prospective Juror No. 17 for cause based upon his lack of English proficiency. The trial court disallowed the challenge because Prospective Juror No. 17 was not yet one of the 12 jurors "in the box."

The parties began their next round of peremptory challenges. Billingsley used his second peremptory challenge against a prospective juror who was not Latino. Shakir made his sixth and final peremptory challenge against a prospective juror who was not Latino. Billingsley then made his third and fourth peremptory challenges against prospective jurors who were not Latino, the result of which was that a Latino prospective juror was put into the box in the excused individual's place. Billingsley made his fifth peremptory challenge against a Latino prospective juror.

5

The result of Billingsley's fifth peremptory challenge was that Prospective Juror No. 17 became Prospective Juror No. 10—he was now seated with the putatively empaneled jurors. Ms. Vallejo immediately challenged him for cause, stating: "He said he hears only about 40 percent of what we say in English. He said he's going to decide what everybody else decides." The trial court denied Billingsley's for-cause challenge.

4. *Shakir's <u>Batson/Wheeler</u> challenge*

At the next opportunity, Billingsley used his final peremptory challenge to excuse Prospective Juror No. 10. In response, Shakir made an oral *Batson/Wheeler* motion contesting Billingsley's challenge. The trial court said: "Do I hear Latino, Latino, Latino?" Mr. Avina: "Yes. You did."

Ms. Vallejo responded: "Your Honor, I'm Latina. I didn't—." She explained: "I didn't challenge him having to do anything with that. It is a language issue. It is the fact that he said that he's going to go with what everybody else says because he can only understand 40 percent of English." She reminded the court that she attempted to challenge him for cause as soon as this information came to light, but the trial court denied her motion as premature. She then stated that she brought a for-cause challenge as soon as Prospective Juror No. 10 was "in the box," but the trial court denied her challenge; thus, she was using her peremptory challenge based upon Billingsley's right to have a jury that understands the evidence.

The trial court recalled Prospective Juror No. 10 stating that he only understood 40 percent of spoken English. It then ruled: "The defense counsel has shown other reasonable grounds for excusing that [prospective juror], and the court accepts her explanation that it's because he indicated he only understands

40 percent of the—what has been going on in the English language." Thus, it denied Shakir's *Batson/Wheeler* motion and permitted Billingsley to use his final peremptory challenge to excuse Prospective Juror No. 10.

### 5. *Final jury*

The final empaneled jury had three Latino jurors.[5]

### B. Relevant law and standard of review

"At issue in a *Batson/Wheeler* motion is whether any specific prospective juror is challenged on account of bias against an identifiable group distinguished on racial, religious, ethnic, or similar grounds. [Citation.] Exclusion of even one prospective juror for reasons impermissible under *Batson* and *Wheeler* constitutes structural error, requiring reversal. [Citation.]" (*Gutierrez, supra*, 2 Cal.5th at p. 1158.)

"The prohibition against the exercise of peremptory challenges to exclude prospective jurors on the basis of group bias applies to civil as well as criminal cases." (*Unzueta v. Akopyan* (2022) 85 Cal.App.5th 67, 79 (*Unzueta*).)

"When a party raises a claim that an opponent has improperly discriminated in the exercise of peremptory challenges, the court and counsel must follow a three-step process. First, the *Batson/Wheeler* movant must demonstrate a prima facie case by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose. . . .

"Second, if the court finds the movant meets the threshold for demonstrating a prima facie case, the burden shifts to the

---

[5]    The appellate record does not indicate if any jurors were African-American.

opponent of the motion to give an adequate nondiscriminatory explanation for the challenges. . . .

"Third, if the opponent indeed tenders a neutral explanation, the trial court must decide whether the movant has proven purposeful discrimination.  [Citation.]  In order to prevail, the movant must show it was "'more likely than not that the challenge was improperly motivated.'"  [Citation.]  This portion of the *Batson/Wheeler* inquiry focuses on the subjective genuineness of the reason, not the objective reasonableness.  [Citation.]  At this third step, the credibility of the explanation becomes pertinent. . . .  To satisfy herself that an explanation is genuine, the presiding judge must make 'a sincere and reasoned attempt' to evaluate the [attorney's] justification, with consideration of the circumstances of the case known at that time, her knowledge of trial techniques, and her observations of the [attorney's] examination of panelists and exercise of for-cause and peremptory challenges.  [Citation.]  Justifications that are 'implausible or fantastic . . . may (and probably will) be found to be pretexts for purposeful discrimination.'  [Citation.]  We recognize that the trial court enjoys a relative advantage vis-à-vis reviewing courts, for it draws on its contemporaneous observations when assessing [an attorney's] credibility.  [Citation.]

"We review a trial court's determination regarding the sufficiency of tendered justifications with "'great restraint.'"  [Citation.]  We presume an advocate's use of peremptory challenges occurs in a constitutional manner.  [Citation.]  When a reviewing court addresses the trial court's ruling on a *Batson/Wheeler* motion, it ordinarily reviews the issue for substantial evidence.  [Citation.]  A trial court's conclusions are

entitled to deference only when the court made a 'sincere and reasoned effort to evaluate the nondiscriminatory justifications offered.' [Citation.] What courts should not do is substitute their own reasoning for the rationale given by the [attorney], even if they can imagine a valid reason that would not be shown to be pretextual." (*Gutierrez*, *supra*, 2 Cal.5th at pp. 1158–1159.)

C. <u>Analysis</u>

Applying these legal principles, we conclude that the trial court did not err. Ample evidence supports the trial court's finding that Billingsley provided a neutral explanation for exercising his peremptory challenge to excuse Prospective Juror No. 10. (*Gutierrez*, *supra*, 2 Cal.5th at pp. 1158, 1168; *People v. Smith* (2019) 32 Cal.App.5th 860, 869.) As Ms. Vallejo explained to the trial court, she was using her peremptory challenge to excuse Prospective Juror No. 10 because (1) the trial court denied her two prior attempts to excuse him for cause, (2) he only understood about 40 percent of what was being said in English, and (3) he was just going to go along with what the other jurors decided. These reasons are clear and reasonably specific, and the trial court found them sincere and nondiscriminatory. (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 548; *People v. Reynoso* (2003) 31 Cal.4th 903, 926.)

Urging us to conclude otherwise, Shakir argues that the trial court erroneously gave Billingsley two bites of the apple to challenge Prospective Juror No. 10. He writes: "[Defense counsel] essentially had a second opportunity to justify the peremptory challenge to [Prospective Juror No. 10] after stating that she's Latina failed." Shakir seems to be asserting that the law required the court to consider her comment about being Latina the exclusive justification for the challenge, and the trial

9

court was prohibited from considering her subsequent statements. This argument is nonsensical.[6] Aside from the fact that Shakir offers no legal authority to support this novel proposition (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852), his argument is unsupported by the appellate record. Rather, after a careful review of the reporter's transcript, it is readily apparent that Ms. Vallejo's first response after being caught off guard by the accusation that she was discriminating against Latino prospective jurors was to demonstrate that the accusation was absurd since she was Latina herself.

Not only was Billingsley's stated reason race-neutral, Shakir failed to prove that it was more likely than not that Billingsley's peremptory challenge was actually based on "impermissible discrimination." (*People v. McDaniel* (2021) 12 Cal.5th 97, 122.) "[L]ook[ing at] all [the] relevant circumstances bearing on the issue of discrimination" (*ibid.*),[7]

---

[6] We also do not understand Shakir's comment that "As a Black Plaintiff in a predominately White jury, the court failed to recognize the primary defense by Defense course, which was [to] paint Plaintiff's mother in a racially prejudicial light as a litigant who was rear ended twice." It appears undisputed that both parties are African-American.

[7] "Relevant circumstances may include the race of the defendant, the ultimate racial composition of the jury, the pattern of strikes, and the extent or pattern of questioning by the [attorney] during voir dire. [Citations.] A court may also consider the fact that the [attorney] impermissibly struck other jurors 'for the bearing it might have upon the strike' of the challenged juror. [Citation.] The high court has also held that

ample evidence indicates that the trial court made a "'sincere and reasoned'" attempt to evaluate Billingsley's peremptory challenge. (*People v. Nadey* (2024) 16 Cal.5th 102, 127.) At the risk of sounding redundant, Ms. Vallejo excused Prospective Juror No. 10 because he had a limited understanding of English and because he was inclined to simply agree with the decision of the other jurors. Furthermore, as set forth above, defense counsel had accepted the jury as constituted three times when two to three Latino prospective jurors were on the panel and multiple peremptory strikes remained. And half of Ms. Vallejo's peremptory strikes were against non-Latino prospective jurors. Under these circumstances, Shakir did not prove that it was more likely than not that Billingsley improperly used his peremptory challenge to this prospective juror. (*People v. DeHoyos* (2013) 57 Cal.4th 79, 108 [concern with a prospective juror's ability to understand the proceedings and anticipated evidence is a proper basis for a challenge]; *People v. Duff* (2014) 58 Cal.4th 527, 546 [attorneys "may legitimately choose to shy away from followers or unduly timid jurors"]; *People v. McDaniel, supra*, 12 Cal.5th at p. 124 [fact that opposing party accepted jury panel with members of the group that counsel is accused of discriminating against suggests lack of bias]; *People v. Smith, supra,* 32 Cal.App.5th at p. 872, fn. 6 [fact that jury includes members of group allegedly discriminated against indicates opponent's good faith in exercising peremptories].)

---

comparative juror analysis may be probative of purposeful discrimination." (*People v. McDaniel, supra*, 12 Cal.5th at p. 122.)

11

To the extent Shakir attempts to rely upon postjury selection events to overturn the trial court's *Batson/Wheeler* ruling, his argument fails. (See *People v. McDaniel*, *supra*, 12 Cal.5th at pp. 122–123; *Gutierrez*, *supra*, 2 Cal.5th at pp. 1158–1159.)

Finally, Shakir's reliance upon Code of Civil Procedure section 231.7 is misplaced. The statute does not currently apply to civil cases. (Code Civ. Proc., § 231.7, subd. (k) ["This section shall not apply to civil cases"]; *Unzueta*, *supra*, 85 Cal.App.5th at p. 77 & fn. 6.)

## II. *Shakir's For-Cause Challenges*

Shakir argues that the trial court erred in denying his for-cause challenges. Specifically, he asserts that "all attempts for actual bias were denied despite potential jurors expressing actual bias toward Plaintiff Shakir's case."

### A. Shakir's argument is procedurally defective

Shakir's argument fails. He does not cite to any portion of the appellate record. (Cal. Rules of Court, rule 8.204(a)(1)(C); *Humboldt County Adult Protective Services v. Superior Court* (2016) 4 Cal.App.5th 548, 555.) And, he does not explain, with a cogent, reasoned argument, how the trial court's rulings prejudiced him. (*Dilbert v. Newsom* (2024) 101 Cal.App.5th 317, 323 ["the obligation to support points with argument and citations to authority requires more than simply stating a bare assertion that the judgment 'is erroneous and leaving it to the appellate court to figure out why; it is not the appellate court's role to construct theories or arguments that would undermine the judgment and defeat the presumption of correctness'"].)

In addition, to appeal the denial of a for-cause challenge, the appellant must have (1) exercised a peremptory challenge to

remove the juror in question, (2) exhausted all available peremptory challenges, and (3) expressed dissatisfaction with the jury as finally constituted. (*People v. Manibusan* (2013) 58 Cal.4th 40, 61; *Kimbley v. Kaiser Foundation Hospitals* (1985) 164 Cal.App.3d 1166, 1169.) Here, Shakir did not expressly state his dissatisfaction with the jury below. (*People v. Black* (2014) 58 Cal.4th 912, 918.) It follows that the issue was not preserved for appeal.

Finally, Shakir has not shown prejudice as a result of the trial court's denial of his for-cause challenges. (*People v. Yeoman* (2003) 31 Cal.4th 93, 114.) There is no evidence or argument that an incompetent juror was forced upon him. (*Ibid.*)

B. <u>Substantial evidence supports the trial court's rulings</u>

Setting these procedural obstacles aside, Shakir's arguments fail on the merits. Substantial evidence supports the trial court's rulings. (*People v. Miles* (2020) 9 Cal.5th 513, 562.) <u>First</u>, regarding the prospective juror who found her prior jury experience in a car accident trial a "waste of time," she acknowledged that this was a different case than the prior one and she was unfamiliar with the facts in this case. <u>Second</u>, regarding the prospective juror who stated that she had been sued before, the trial court denied the challenge because the individual stated that she does investigations as part of her human resources job and that she could be fair and listen to all of the evidence before making a decision here. <u>Third</u>, regarding the prospective juror who felt that Shakir was being disrespectful for wearing sunglasses, that individual retracted his comment after learning that Shakir wore sunglasses for medical reasons.

13

III. *Evidentiary Rulings*

Shakir argues that the trial court committed two evidentiary errors: (1) It erroneously denied his motion in limine to exclude evidence of car accidents after the July 2018 accident with Billingsley; and (2) It erroneously excluded evidence of a photograph of the October 2018 accident between Ward and a third party.

A. <u>Relevant factual background</u>

1. *Shakir's motion in limine*

Prior to trial, Shakir filed a motion in limine to exclude evidence of accidents subsequent to the July 2018 collision with Billingsley, in which Ward was again rear-ended while Shakir was in her car; in particular, Shakir sought to exclude evidence of an accident in October 2018. Shakir argued that Billingsley intended to introduce evidence of the October 2018 accident to suggest to the jury that the October accident (not the July accident involving Billingsley) caused Shakir's injuries.

Billingsley opposed the motion on the grounds that evidence of the October 2018 accident was relevant given that it resulted in injuries to the same body parts that Shakir claimed had been injured in the July 2018 accident.

The trial court denied Shakir's motion, finding that evidence showing that the October accident resulted in injuries to the same body parts that Shakir claimed were injured in the collision with Billingsley was relevant and admissible.

2. *Ward's testimony*

During Ward's testimony, Shakir attempted to introduce into evidence a photograph of the October 2018 accident to show that it was so minor it could not have been a substantial factor in causing Shakir's injuries. Billingsley objected on the grounds

14

that Shakir failed to produce the photograph during discovery despite his request for such evidence, and the trial court previously granted a motion to exclude any documents not produced in discovery. Shakir responded that the photograph was not within the scope of Billingsley's discovery request. Ultimately, the trial court excluded evidence of the photograph, finding that it was within the scope of Billingsley's request for production, it was not produced in discovery, and it should be excluded pursuant to the court's earlier ruling to exclude evidence not produced in discovery.

Later during Ward's testimony, Shakir attempted to use the photograph to "refresh" Ward's recollection about how minimal the October 2018 accident was. The trial court sustained Billingsley's objection when it became clear that Shakir was really trying to get Ward to describe the photograph.

B. No error

The trial court did not abuse its discretion in denying Shakir's motion in limine. (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) Evidence of the October 2018 accident was relevant and admissible. (Evid. Code, §§ 210, 351, 352.) After all, Billingsley's theory at trial was that the October 2018 accident was the sole or partial cause of the injuries and damages claimed in the instant case. Under these circumstances, the challenged evidence was relevant. (*Ault v. International Harvester Co.* (1974) 13 Cal.3d 113, 121–122 [evidence of other accidents is relevant to causation]; *Brown v. Affonso* (1960) 185 Cal.App.2d 235, 238 [evidence of injuries sustained in prior car accidents was relevant to damages].)

*Colombo v. BRP US Inc.* (2014) 230 Cal.App.4th 1442 does not compel a different result. In that case, a trial court properly

15

excluded evidence of other similar injuries in unrelated accidents "because their admission would have led to myriad mini-trials regarding these other claims." (*Id*. at p. 1483.) Here there was no such risk: There was only one other accident (October 2018) and involved the same driver (Ward), the same passenger (Shakir), and the same injured body parts.

The trial court also did not err in excluding from evidence a photograph related to the October 2018 accident. Based upon the parties' appellate briefs and the record provided,[8] it appears that Billingsley requested copies of all photographs of damage to Ward's vehicle during discovery; Shakir did not produce the subject photograph; and the trial court excluded all evidence not produced during discovery. The fact that Billingsley may have solicited testimony about the October 2018 accident does not alter our analysis; the doctrine of "opening the door" is not unfettered (see, e.g., *In re Lucas* (2004) 33 Cal.4th 682, 733), and Shakir offers no legal authority that it allows a plaintiff who has not complied with his discovery obligations to admit unproduced evidence at trial.

C. <u>No prejudice</u>

It is well-settled that a judgment may not be reversed as a result of evidentiary error unless the appellant can show that the error was prejudicial. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475.) Shakir cannot do so. The evidentiary issues that he raises on appeal relate solely to the causation and damages elements of his negligence cause of action. (See *Ault v.*

---

[8] Billingsley's discovery request is not part of the appellate record. We only have Ms. Vallejo's statement at trial regarding the scope of the discovery request and the trial court's confirmation that it was "all inclusive."

*International Harvester Co.*, *supra*, 13 Cal.3d at pp. 121–122; *Brown v. Affonso*, *supra*, 185 Cal.App.2d at p. 238.) But the jury here specifically found Billingsley not negligent; because it did not reach the issues of causation and damages, the challenged evidentiary rulings could not have been prejudicial to Shakir.

IV. *Trial Court Fairness*

Finally, Shakir argues that the trial court made disparaging remarks about Ward and/or Shakir's attorney, creating an impression of judicial bias. This argument has been forfeited on appeal. Shakir "did not object to [any] of the trial court's remarks. Ordinarily, the lack of an objection at trial forfeits the claim on appeal." (*People v. Houston* (2012) 54 Cal.4th 1186, 1220.) Although there are exceptions to this rule (*ibid.*), Shakir has not argued that any such exception applies here.

## DISPOSITION

The judgment is affirmed. Billingsley is entitled to costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
CHAVEZ

17